# United States Court of Appeals
## For the First Circuit

---

No. 04-2673

GRACE C. OSEDIACZ,

Plaintiff, Appellee,

v.

CITY OF CRANSTON, ETC., ET AL.,

Defendants, Appellants.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, U.S. District Judge]

---

Before

Selya, Circuit Judge,
Coffin, Senior Circuit Judge,
and Howard, Circuit Judge.

---

Tom Marcelle, with whom Steven Frias and Michael Glucksman, City Solicitor, were on brief, for appellants.

Michael T. Eskey, with whom Amato A. DeLuca, Miriam Weizenbaum and DeLuca & Weizenbaum Ltd. were on brief, for appellee.

---

July 6, 2005

---

**SELYA**, **Circuit Judge**. This appeal has its genesis in a decision by Cranston, Rhode Island (the City) to institute a policy (the Policy) that allowed private parties to erect holiday displays on a prime piece of public property, subject to certain administrative requirements and the approval of the mayor. A number of individuals and groups seized the opportunity. Collectively, they erected a myrioramic array of exhibits, some of which (such as a nativity scene) were overtly religious. A citizen of Cranston took umbrage and sued for declaratory and injunctive relief.

The district court rebuffed the plaintiff's Establishment Clause challenge but found her Free Speech Clause claim meritorious and enjoined continued use of the Policy on the ground that it gave the mayor unconstrained authority to approve (and, by extension, to disapprove) proposed displays. Osediacz v. City of Cranston, 344 F. Supp. 2d 799, 814 (D.R.I. 2004). The City appeals. Concluding, as we do, that the plaintiff lacks standing to mount a challenge under the Free Speech Clause, we reverse.

## I.

## Background

The facts are straightforward. As the 2003 holiday season approached, the City issued the Policy, which designated the south lawn of City Hall as a limited public forum for the display of holiday-themed and seasonal decorations. The Policy was

designed to continue in force from year to year. It permitted the public to erect "appropriate" displays between December 5 and January 1, defined "appropriate" as "being suitable and proper for the holiday occasion," and explicitly prohibited any display that would "shock the consciousness [sic] of the community." The Policy required any person wishing to erect an exhibit to provide his or her name, address, and telephone number, a brief written description of the exhibit, and a signed release absolving the City of any liability for damage to the exhibit. Of particular pertinence here, the Policy proclaimed that the mayor or his designee "must approve" all displays.

In short order, several exhibits appeared on the south lawn. These included a large menorah accompanied by a sign conveying wishes for "a Happy Chanukah"; a near-life-size nativity scene; an inflatable seven-foot-tall snowman and a similarly sized Santa Claus; a huge holographic angel; a train of fifteen pink flamingos with Santa Claus hats; and a sign that read "Happy Holidays from the Teamsters Union." Faced with this embarrassment of riches, the City determined on December 21, 2003 that the south lawn could contain nothing more and barred further entries.

On December 22, 2003, plaintiff-appellee Grace Osediacz filed suit in the United States District Court for the District of Rhode Island. She asserted that the display of religious symbols on the City Hall lawn violated the Establishment Clause. She also

challenged the Policy as contravening the Constitution's Establishment, Free Speech, and Due Process Clauses.

After a brief period of discovery, the City moved for summary judgment with respect to the Establishment Clause claims. The plaintiff opposed the motion. The district court expanded the summary judgment battleground to include the free speech claim and solicited additional affidavits and briefs. See Berkovitz v. Home Box Office, Inc., 89 F.3d 24, 29 (1st Cir. 1996) (discussing a district court's authority to grant sua sponte summary judgment).

In her main affidavit, the plaintiff portrayed herself as a Cranston resident and taxpayer who regularly conducts business at City Hall. She stated that she found the spectacle of a menorah and creche on municipal property an inappropriate governmental endorsement of religion. She did not aver, however, that she herself harbored any interest in erecting a display.

The district court ruled that the tableau on the south lawn of City Hall, though it included religious symbols, was nothing more than "a celebration of the holiday in both its religious and secular senses." Osediacz, 344 F. Supp. 2d at 807 (citing Lynch v. Donnelly, 465 U.S. 668, 680-81 (1984)). The court further ruled that the displays had no religious purpose and that they did not have the effect of endorsing religion. Id. at 807-10 (citing County of Allegheny v. ACLU, 492 U.S. 573, 579-82 (1989)). Consequently, the court granted partial summary judgment in the

City's favor on the plaintiff's flagship Establishment Clause claim.[1] See id. at 815.

The court was less sanguine about the Policy's free speech implications. After determining that the plaintiff had standing to raise a free speech claim, id. at 811-12, the court noted that the Policy, on its face, provided no meaningful standards that in any way constrained the mayor's authority to approve or disapprove displays, id. at 812-13. Nor was there a sufficient history of past practice from which such standards could be inferred. Id. at 813-14. Because the Policy vested essentially standardless discretion in the mayor to grant or withhold approval for displays at his whim, the Policy constituted a prior restraint on speech and, therefore, transgressed the Free Speech Clause of the First Amendment. Id. at 814 (citing City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 772 (1988)). The court granted partial summary judgment for the plaintiff on that claim, id., and accordingly, declined to address her due process claim, id. at 801 n.2.

The City appeals from the district court's resolution of the free speech claim. We have jurisdiction under 28 U.S.C. § 1291. Since the district court decided this case at the summary

---

[1]The plaintiff has not appealed from this ukase. Accordingly, that portion of the judgment is not before us and we eschew further discussion of it.

judgment stage, we undertake de novo review. Houlton Citizens' Coalition v. Town of Houlton, 175 F.3d 178, 184 (1st Cir. 1999).

## II.

## Analysis

Federal courts are courts of limited jurisdiction. Rhode Island v. EPA, 378 F.3d 19, 22 (1st Cir. 2004). They are not empowered to offer advisory opinions. United States v. Green, 407 F.3d 434, 444 (1st Cir. 2005). Thus, standing to sue is an indispensable component of federal court jurisdiction. As the Supreme Court has explained:

> [T]he case or controversy requirement defines with respect to the Judicial Branch the idea of separation of powers on which the Federal Government is founded. The several doctrines that have grown up to elaborate that requirement are founded in concern about the proper — and properly limited — role of the courts in a democratic society.

Allen v. Wright, 468 U.S. 737, 750 (1984) (citation and internal quotation marks omitted).

In this instance, our discussion begins and ends with the standing issue. Standing doctrine comprises a mix of constitutional and prudential criteria. See Elk Grove Unified Sch. Dist. v. Newdow, 124 S. Ct. 2301, 2308 (2004); N.H. Right to Life PAC v. Gardner, 99 F.3d 8, 13 (1st Cir. 1996). The constitutional core of standing requires that a plaintiff make a tripartite showing: she must demonstrate that she has suffered an injury in fact, that her injury is fairly traceable to the disputed conduct,

and that the relief sought promises to redress the injury sustained. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); Gardner, 99 F.3d at 13. The party seeking to invoke the federal court's jurisdiction – normally, the plaintiff – bears the burden of pleading and proof on each step of the standing pavane. Lujan, 504 U.S. at 561.

In keeping with these important concepts, the Supreme Court has embellished the constitutional requirements attendant to standing with an array of prudential monitions. The prudential aspects of standing include "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." Allen, 468 U.S. at 751.

In this case, the City challenges the plaintiff's standing. It reasons that because the plaintiff never had any interest in erecting a display, there was no chance that she would be subjected to the vagaries of the approval process and, hence, she has failed to show a sufficiently personalized injury emanating from the Policy. To bolster this reasoning, the City relies heavily on Laird v. Tatum, 408 U.S. 1 (1972), in which the Supreme Court wrote that if the complaining parties "themselves are not chilled, but seek only to represent those millions whom they

believe are so chilled, [they] clearly lack that personal stake in the outcome of the controversy essential to standing." Id. at 13 n.7 (citations and internal quotation marks omitted).

The plaintiff attempts to blunt the force of this reasoning by touting a line of cases holding that traditional standing requirements are relaxed in the precincts patrolled by the First Amendment. See, e.g., Broderick v. Oklahoma, 413 U.S. 601, 612 (1973) (holding that when First Amendment concerns are at stake, a plaintiff may "challenge a statute not because [her] own rights are violated, but because . . . the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression"). The district court accepted this distinction. See Osediacz, 344 F. Supp. 2d at 812. We do not.

We think that this clash between competing lines of authority may readily be resolved by sorting out some basic concepts. Standing is not a unitary concept but, rather, a group of doctrines collectively intended to ensure that the federal courts adjudicate only those actual cases or controversies that fall within the purview of Article III of the Constitution. See Newdow, 124 S. Ct. at 2308 (describing standing doctrine as "a series of rules"). When certain types of facial challenges to statutes, ordinances, regulations, or governmental policies are premised on First Amendment grounds, they invite a lowering of

conventional standing barriers because the traditional jus tertii ban on litigating the rights of third parties is arguably inapplicable.[2] See Forsyth County v. Nationalist Movement, 505 U.S. 123, 129 (1992) (explaining that third-party standing concerns will not pretermit a facial challenge to a statute on First Amendment grounds). Thus, the lowering of the bar intersects with standing doctrine only on the issue of third-party standing.

That distinction demonstrates why City of Lakewood and similar cases are not persuasive here. Historically, facial challenges were disfavored, in part because they were thought to require the challenger to raise the rights of others. See, e.g., United States v. Raines, 362 U.S. 17, 20-22 (1960). Under this traditional approach, the normal jus tertii rules made it nearly impossible to have a court declare a statute facially unconstitutional; after all, an individual litigant would have standing to object to it only as applied to her situation. See Richard H. Fallon, As-Applied and Facial Challenges and Third Party Standing, 113 Harv. L. Rev. 1321, 1322 (2000). As a corollary, a plaintiff who had not herself been subjected to an unconstitutional

---

[2]Even this limited relaxation of conventional standing requirements is controversial. See, e.g., Richard H. Fallon, Jr., As-Applied and Facial Challenges and Third Party Standing, 113 Harv. L. Rev. 1321, 1359-64 (2000) (arguing that the Supreme Court's permissive approach to facial challenges in the First Amendment context has little to do with third-party standing but, rather, reflects a substantive concern that facially invalid statutes harm the plaintiff herself, regardless of whether a more narrowly drawn statute could regulate her conduct).

exercise of power could not challenge the offending statute at all. See id.

The City of Lakewood Court recognized that as long as no one was denied a permit, no one would have standing to mount a challenge — yet the chilling effect of the unconstitutional grant of standardless discretion would remain undiminished. Id. at 757-58. To correct this problem, the Court loosened the customary prudential limits that constrain a plaintiff's standing with respect to facial challenges brought against statutes that vest unbridled discretion in public officials to censor speech. See id. at 759. Confronted with a facial challenge to a licencing statute, it ruled that in the case of "a licensing statute [that] allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity," a plaintiff "who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license." 468 U.S. at 755-56.

The Court did not, however, carve out any exception to the core requirements of constitutional standing. These requirements, including the bedrock requirement that the plaintiff herself have suffered an injury in fact, were left intact. Importantly, the Court recognized that the theoretical risk of self-censorship inherent in statutes conferring standardless discretion on public officials was not itself a sufficient injury within the meaning of Article III. Id. at 759. Indeed, the

Justices stressed that a plaintiff, as a prerequisite to suit, had to show that the law that she aspired to challenge "pose[d] a real and substantial threat [to] identified censorship risks." Id. (emphasis supplied); see also Tatum, 408 U.S. at 13-14 & n.7 (explaining that even in First Amendment cases, courts must guard against rendering advisory opinions).

Virtually by definition, the threat of self-censorship cannot exist if a party has no intention either of speaking or otherwise exposing herself to the vagaries of a standardless licensing policy. It is, therefore, not surprising that in every case the plaintiff cites, the party mounting a facial challenge at the very least desired or intended to undertake activity within the compass of the challenged statute. See, e.g., Forsyth County, 505 U.S. at 127; City of Lakewood, 486 U.S. at 753-54. Consequently, those cases cannot be read to reduce to a state of irrelevancy the constitutionally mandated requirement that a plaintiff must show an injury in fact.

The short of it is that were the instant plaintiff armed with constitutionally sufficient standing credentials, she could prevail on an issue of this sort merely by showing that the Policy, by vesting standardless discretion in the mayor, constitutes an impermissible prior restraint. See, e.g., Freedman v. Maryland, 380 U.S. 51, 56 (1965). In that event, the plaintiff could press the rights of others; she would not have to make the additional

(prudential) showing that the mayor could not, consistent with the Free Speech Clause, deny her permission to erect a particular display. The net result, then, is that even though prudential standing concerns are relaxed in certain facial challenges implicating the First Amendment, a litigant still must demonstrate that she satisfies the constitutional minima essential to establish standing.

Seen in this light, the question reduces to whether the plaintiff has been injured within the meaning of Article III. Here, that inquiry is informed by what the plaintiff does not assert. She does not assert that she herself unsuccessfully attempted to place her handiwork on the south lawn of City Hall. She does not assert that she has any interest in erecting a display, but fears that her expression will be subjugated to a standardless approval process. She does not assert that the Policy takes away her appetite for expressing herself or chills her speech in any cognizable way. Her only claim of injury is that, as a resident and taxpayer, she is subject to the effects of the Policy and that, by conferring unbridled discretion on the mayor to approve or reject displays, the Policy has a chilling effect on the speech of others.

This is not a sufficient predicate to allow this suit to go forward. It is apodictic that a mere interest in seeing the government turn square corners is not the kind of particularized

interest that can satisfy the most basic constitutional prerequisite for standing. See Fed. Election Comm'n v. Akins, 524 U.S. 11, 23-24 (1998) (collecting cases). It has been equally clear for more than three-quarters of a century that, with certain narrow exceptions not implicated here, taxpayers, as such, lack generalized standing to challenge the constitutionality of governmental action. See Frothingham v. Mellon, 262 U.S. 447, 487 (1923). The plaintiff's standing, therefore, cannot be grounded on the mere fact that she pays taxes to a municipality which, in turn, expends funds to further an unconstitutional exercise of government power. See Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, 454 U.S. 464, 477 (1982).

In the last analysis, all that remains is the question of whether the risk that the Policy will have a chilling effect on the speech of others is a sufficient injury to the plaintiff to meet the first prong of the constitutional test for standing. The Supreme Court answered that question in Tatum, a case that involved a challenge to the scope of domestic intelligence gathering by the United States Army. There, the plaintiffs alleged that the Army was spying on civilians whom the Army believed might engage in civil disobedience and that such systematic surveillance chilled speech by deterring citizens from indulging in expression that might draw the Army's ire. Tatum, 408 U.S. at 9-10.

The Tatum Court held that the plaintiffs, who had not themselves been surveilled, lacked standing to challenge the purportedly pernicious practice. Id. In so holding, the Court acknowledged that a chill on speech sometimes may be a cognizable injury but explained that, in order to have standing, the plaintiff must be within the class of persons potentially chilled. Id. at 12-13. In words that seem apropos here, the Court concluded: "Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." Id. at 13-14.

The plaintiff's plight falls squarely within the compass of this admonition. Although offended by the Policy, she has sustained no injury in fact. Thus, she has no sufficient personal stake in this litigation to ground a determination that she has standing to sue. See id. at 13 n.7. Even if the Policy chilled some speech, it did not chill any of the plaintiff's speech.

The plaintiff strives mightily to dodge this bullet. Her first attempted evasion is a suggestion that we should not assume from an empty record that her speech was not chilled. That suggestion turns the standing inquiry on its head. It was the plaintiff who invoked federal jurisdiction. Hence, it was her burden to put adequate facts in the record from which a court reasonably could conclude that she was among those whose speech was

potentially chilled. See Lujan, 504 U.S. at 561. Having failed to carry that burden, she lacks standing to maintain this suit.

The plaintiff's second attempted evasion is equally unavailing. She suggests that because the Policy vests unfettered discretion in the mayor over what displays are permitted, the mayor conceivably could use that discretion to favor religious expositions and, thus, infringe the plaintiff's rights under the Establishment Clause. We reject this effort to hitch the plaintiff's First Amendment claim to her defunct Establishment Clause claim. Simply asserting that the mayor might exercise his authority in an unconstitutional manner is no different than saying that the existence of standardless discretion is itself unconstitutional and redressable without regard to the existence of an injury in fact. Any way the pie is sliced, the plaintiff still has to show some reasonable possibility that she would be subject to the constitutionally defective action. See Tatum, 408 U.S. at 13 n.7. She has not done so.

It is, of course, disquieting whenever government takes an action that seems to transgress a constitutional protection. But in the law, as elsewhere, "two wrongs seldom make a right," Foster v. Dalton, 71 F.3d 52, 57 (1st Cir. 1995) — and it would be wrong to arrogate unto ourselves the power to hear a case at the behest of a plaintiff who lacks standing to sue.

Moreover, we perceive no unfairness. The standing inquiry is not very demanding. To satisfy its first element, the plaintiff need not show that the mayor actually denied her permission to erect a display. See, e.g., City of Lakewood, 486 U.S. at 756. She need not even show that she actually made such a request. See, e.g., Freedman, 380 U.S. at 56. Nevertheless, the record must contain evidence sufficient to indicate an objectively reasonable possibility that she would be subject to the allegedly unconstitutional mayoral approval requirement. See Tatum, 408 U.S. at 11; see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 183-84 (2000) (explaining that a plaintiff need not show a certainty of future harm to establish standing, so long as there is a reasonable threat of such harm). The record before us contains no such evidence. It follows that this suit cannot be maintained in a federal court.

**III.**

**Conclusion**

Let us be perfectly clear. We recognize, as did the learned district court, Osediacz, 344 F. Supp. 2d at 812-14, that the Policy is constitutionally suspect and we encourage the City to abandon it (or, at least, to modify it substantially). Absent a plaintiff with a cognizable interest in the outcome, however, this is not an appropriate proceeding in which to adjudicate the Policy's merits.

We need go no further. The Constitution requires that litigants have a personal stake in a case before they may sue in a federal court, see, e.g., Warth v. Seldin, 422 U.S. 490, 499 (1975), and this plaintiff has not provided facts sufficient to show that she possesses such a stake. Accordingly, her free speech claim should have been dismissed without prejudice for want of subject matter jurisdiction.[3]

**We reverse the partial summary judgment entered by the district court on the free speech claim and remand the case to the district court with instructions to dismiss that claim and the due process claim without prejudice for want of standing. All parties shall bear their own costs.**

[3]For the same reasons, the plaintiff's due process claim, not reached by the lower court, see 344 F. Supp. 2d at 801 n.2, likewise should have been dismissed.